**ENGER v. NORTHERN FINANCE CORPORATION.**

District Court, D. Minnesota, Fourth Division. March 1, 1929.

Edson S. Gaylord, of Minneapolis, Minn., for plaintiff.

Rockwood & Mitchell, of Minneapolis, Minn., for defendant.

SANBORN, District Judge. In October, 1928, the plaintiff commenced an action in the state district court of Sherburne county, Minn., against the defendant, under section 9556, General Statutes of Minnesota 1923, to determine adverse claims to the northwest quarter of the northeast quarter of section 36, township 34, range 28, in Sherburne county, Minn. The complaint alleges that the plaintiff is the owner of these premises; that the defendant claims some right, title, or interest in or to them, adverse to the plaintiff, which claims are null and void. The plaintiff then prays that the adverse claim of the defendant be adjudicated and determined, and that the plaintiff be decreed to be the owner in fee of the premises. On the 19th day of October, 1928, the defendant prepared its petition and bond for removal, and in the petition alleges that the defendant is a foreign corporation and a nonresident of the state of Minnesota, and that the matter and amount in dispute exceeds the sum of $3,000. The order of removal was signed on October 22d. The defendant filed its answer on November 2, 1928, alleging that it is a citizen of Delaware, and that the amount in controversy exceeds the sum of $3,000. It denies that the plaintiff is the owner or in possession of the land described in the complaint, and admits that the defendant claims some right, title, interest, claim, and lien in, to, and upon the land in question adverse to the plaintiff. The defendant then alleges that on the 19th day of September, 1926, William S. Enger was the owner and in actual possession of this land; that on the 19th day of September, 1926, the defendant recovered judgment in the district court of Hennepin county, Minn., against William S. Enger in the sum of $9,285.55, a transcript of which judgment was, on the 11th day of August, 1928, filed and docketed in the district court of Sherburne county, Minn.; that, under and by virtue of a writ of execution upon the judgment issued out of the Hennepin county district court to the sheriff of Sherburne county, the sheriff levied upon the lands described in the complaint and other lands also the property of William S. Enger; that on the 1st day of October, 1928, the sheriff duly sold all of the lands levied upon by him under the execution to the defendant (then follows a description of these lands in Sher-

burne county bid in by 40's and a statement of the price paid therefor by the defendant); that the sheriff delivered to the defendant his certificate of such sale, which was recorded on the 3d day of October, 1928, in the office of the register of deeds of Sherburne county; that no redemption of the lands so sold has been made; that on the 23d day of October, 1928, the sheriff returned the execution to the district court of Hennepin county satisfied in the sum of $9,078.92, and unsatisfied as to the remainder.

"As a further defense and as a counterclaim and cause of action against the plaintiff," the defendant alleges, in addition, that on the 15th day of October, 1926, William S. Enger and his wife, the plaintiff, for the purpose of hindering, delaying, and defrauding his creditors, and particularly the defendant, executed to his daughter, Martha V. Enger, a deed of part of these lands; that, at the same time and as part of the same transaction and for the same fraudulent purpose, Martha V. Enger executed to the plaintiff a deed to the northwest quarter of the northeast quarter of section 36, township 34, range 28, the east half of the southeast quarter of section 25, township 34, range 28, and the southwest quarter of the southeast quarter of section 25, township 34, range 28, which were included in the deed from William S. Enger to Martha V. Enger; that both of these deeds were recorded in the office of the register of deeds of Sherburne county, Minn., on the 19th day of October, 1926; and that both were executed without consideration. The defendant then alleges that, after the commencement of this action, and on the 18th day of October, 1928, the plaintiff commenced a registration proceeding, under sections 8247–8329 of the General Statutes of Minnesota for 1923, in the district court of Sherburne county, Minn., to register the title to the northeast quarter of the southeast quarter and the southeast quarter of the southeast quarter and the southwest quarter of the southeast quarter of section 25, township 34, range 28; that the object and purpose of the registration proceeding is to divide and split the defendant's right and cause of action for the cancellation of the deeds described in the counterclaim, and to deprive the defendant of its right to have such cause of action tried and determined in the courts of the United States, by reducing the amount involved in a single action or proceeding below the sum of $3,000; that it is the intention and purpose of the plaintiff to hasten the trial of the action in the district court of Sherburne county and to secure a deter-

mination thereof favorable to the plaintiff before this action can, in the usual course, be tried and determined in the District Court of the United States; that the plaintiff will, unless restrained by the order and injunction of this court, use all means within her power so to proceed in the district court of the state before this action can be tried in the District Court of the United States; that the facts respecting the plaintiff's title and source of title, and the defendant's right and lien as to the land described in the complaint in this action, are the same as the facts respecting the plaintiff's title and source of title and the defendant's right and lien as to the land described in the registration proceeding. The defendant then prays judgment that the plaintiff take nothing by her action; that the deed from William S. Enger and Anna M. Enger, his wife, to Martha V. Enger, and the deed from Martha V. Enger to Anna M. Enger be declared null and void and of no effect, and that the record of said deeds be canceled; confirming and establishing the title of the defendant as purchaser of the land; and for a writ of injunction restraining the plaintiff, during the pendency of this action, from taking any steps in the prosecution or trial of the registration proceeding.

It appears from the answer that three of the 40's which have been fraudulently conveyed to the plaintiff, Anna M. Enger, by Martha V. Enger, had been bid in at the sheriff's sale by the defendant for $800 each, and the fourth 40 had been bid in for $700, making $3,100 in all. The one 40 described in the complaint in this action was bid in for $700, and it is conceded that the value of that 40 is not more than $700.

Section 71, tit. 28, USCA, so far as we are concerned, provides that any suit of a civil nature, at law or in equity, of which the District Courts of the United States are given jurisdiction, in any state court, may be removed into the District Court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that state.

Section 41(1), tit. 28, USCA, provides that a District Court of the United States shall have original jurisdiction of all suits of a civil nature, at common law or in equity, where the matter in controversy exceeds, exclusive of interest and costs, the sum of value of $3,000, and is between citizens of different states.

It is claimed by the plaintiff that this suit is one which involves no more than $700, while the contention of the defendant is that it involves at least the sum of $3,100. The plaintiff's theory is that it is an action to quiet title to 40 acres of land, while the theory of the defendant is that it is virtually a suit to have determined the questions of the validity of the deed from Martha V. Enger to Anna M. Enger, whereby Anna M. Enger claims to have secured the title to this 40 and three other 40's, the combined value of which is $3,100, and the invalidity of the execution sale to the defendant.

An investigation of the authorities on the questions presented has required more time than it would probably take to try several of such cases upon the merits; but the parties are entitled to a determination of the questions involved.

One point which seems to have been well settled by the authorities is that, to render an action removable to a federal court, it is necessary that it could have been originally brought in the federal court. See cases cited in note 73, tit. 28, § 71, p. 44, USCA. See, also, Kansas Gas & Electric Co. v. Wichita Natural Gas Co. (C. C. A.) 266 F. 614, 618.

In Graves v. Corbin, 132 U. S. 571, 585, 10 S. Ct. 196, 200 (33 L. Ed. 462) it is said: "The case as made by the bill, and as it stood at the time of the petition for removal, is the test of the right to removal."

In Pollitz v. Wabash R. Co. (C. C. A. 2d Circuit) 176 F. 333, 335, the court said: "Only the bill is to be considered on this motion to remand."

It should be said, however, that in both of the above cases the question was as to whether a separable controversy was involved which might be removed.

Judge Bourquin, of the Ninth Circuit, in the case of Hall v. Great Northern R. Co. (D. C.) 197 F. 488, 490, says: "By reason of the statutes aforesaid, it is settled law that a case that could not be brought and maintained in a federal court against defendant's objections, cannot be removed and maintained therein against plaintiff's objections" —citing In re Moore, 209 U. S. 506, 28 S. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164.

It seems to be the rule that the question of removability is to be determined from the complaint and the petition for removal as of the time the petition is filed.

In Chesapeake & Ohio R. Co. v. Cockrell, Adm'r, 232 U. S. 146, 151, 34 S. Ct. 278, 279 (58 L. Ed. 544), this language appears: "The right of removal from a state to a Federal court, as is well understood, exists only in certain enumerated classes of cases. To

the exercise of the right, therefore, it is essential that the case be shown to be within one of those classes, and this must be done by a verified petition setting forth, agreeably to the ordinary rules of pleading, the particular facts, not already appearing, out of which the right arises. It is not enough to allege in terms that the case is removable or belongs to one of the enumerated classes, or otherwise to rest the right upon mere legal conclusions. As in other pleadings, there must be a statement of the facts relied upon, and not otherwise appearing, in order that the court may draw the proper conclusion from all the facts and that, in the event of a removal, the opposing party may take issue, by a motion to remand, with what is alleged in the petition"—citing Little York Gold Washing & Water Co. v. Keyes, 96 U. S. 199, 202 (24 L. Ed. 656); Carson v. Dunham, 121 U. S. 421, 426, 7 S. Ct. 1030 (30 L. Ed. 992); Crehore v. Ohio & Mississippi Ry. Co., 131 U. S. 240, 244, 9 S. Ct. 692 (33 L. Ed. 144); Powers v. Chesapeake & Ohio Railway Co., 169 U. S. 92, 101, 18 S. Ct. 264 (42 L. Ed. 673).

In Sturgeon River Boom Co. v. W. H. Sawyer Lumber Co. (C. C.) 89 F. 113, it was said: "I think it is necessary that it should appear from the pleadings at the time of the removal that the requisite sum is in controversy, and that the averment in the petition is not competent to show such fact in the absence of proper pleadings to support it."

It seems further to be the rule that it is the claim of the plaintiff, and not the counterclaim of the defendant, which fixes the amount in dispute in determining the right to remove the cause. See McKown v. Kansas & T. Coal Co. (C. C.) 105 F. 657, and cases cited. There is, however, a conflict of authority on this point, which was pointed out by that case. See, also, note 180, under section 71, tit. 28, USCA p. 99.

In Lewis on Removal of Causes, p. 187, he says: "The amount in controversy must be determined primarily from the initial pleading. The plaintiff may voluntarily and conclusively determine the amount to which his recovery shall be limited. The removability of an action from the State to the Federal courts depends upon the pleadings and the state of the record at the time the petition for removal is filed."

In Simkins Federal Practice, Revised Edition, p. 1117, the author states: "The jurisdiction depends on the amount in controversy, as stated in the original petition in the State court, and not the counterclaim of the defendant, is said to be the rule in Illinois C. R. Co. v. A. Waller & Co. (C. C.) 164 F. 359; Falls Wire Mfg. Co. v. Broderick (C. C.) 2 McCrary, 489, 6 F. 654; Indian Mountain Jellico Coal Co. v. Asheville Ice & Coal Co. (C. C.) 135 F. 837; La Montagne v. T. W. Harvey Lumber Co. (C. C.) 44 F. 645; Bennett v. Devine (C. C.) 45 F. 705; McKown v. Kansas & T. Coal Co. (C. C.) 105 F. 657; Waco Hardware Co. v. Michigan Stove Co., 33 C. C. A. 511, 63 U. S. App. 396, 91 F. 289. But it was held contra in Clarkson v. Manson (C. C.) 18 Blatchf. 443, 4 F. 257. Price & Hart v. T. J. Ellis & Co. (C. C.) 129 F. 482, reviewing the cases and concluding that the plaintiff may remove at and before the time he is called to plead to the counterclaim. The cases are conflicting and irreconcilable, but the better rule is that the original petition fixes the amount upon which jurisdiction to remove depends."

In this case, at the time the petition for removal was filed—from what appears in the complaint and what appears in the petition for removal—no greater amount was involved than the value of the 40 acres described in the complaint, and the case was not at that time one of which the federal court would have had original jurisdiction.

Assuming, however, that the court can now take into consideration the averments of the answer in determining what is actually in controversy in this suit, can it then be said that that amount exceeds $3,000? That raises an extremely difficult question.

If the plaintiff, while pretending to have the title quieted to one 40 worth $700, is actually asking the court to determine the title to four 40's and to adjudge that the defendant has no right, title, or interest therein, the amount in controversy would appear to be $3,100.

In 34 C. J. 906, the text is: "As a general rule the estoppel of a judgment extends only to the particular property or right in controversy. But where the judgment determines the title or right under which the party claims, it is decisive as to any other property or right claimed under the same title." It would therefore appear that, if Anna M. Enger is claiming, as the defendant asserts, under this particular deed, which it says is fraudulent, the four 40's which it bought at the execution sale, the determination that she was the owner of the 40 described in her complaint and that the defendant had no title to it would settle that question as to all property conveyed by the deed. The probative effect of a judgment, however,

it has been said in a number of cases, cannot be taken into consideration in determining the amount in controversy. Many of these cases were referred to by Judge Kenyon in the case of Elliott v. Empire Natural Gas Co. (C. C. A.) 4 F.(2d) 493. In that case, the court came to the conclusion that the matter in dispute was the matter directly involved in the particular case, and that the amount or value of the right in dispute could not be augmented by the collateral effect a judgment in the case might produce. Judge Kenyon says: "It is what the appellees will directly lose in this suit that determines the jurisdictional value of the matter involved. It is not what they may lose as an indirect result of this suit." This is the holding of Elgin v. Marshall, 106 U. S. 578, 1 S. Ct. 484, 27 L. Ed. 249; Gibson v. Shufeldt, 122 U. S. 27, 7 S. Ct. 1066, 30 L. Ed. 1083; The Sydney, 139 U. S. 331, 11 S. Ct. 620, 35 L. Ed. 177; and New England Mortgage Security Co. v. Gay, 145 U. S. 123, 12 S. Ct. 815, 36 L. Ed. 646, all of which are referred to in that case.

In Smith v. Adams, 130 U. S. 167, 175, 9 S. Ct. 566, 569 (32 L. Ed. 895) this statement is made: "By matter in dispute is meant the subject of litigation, the matter upon which the action is brought and issue is joined, and in relation to which, if the issue be one of fact, testimony is taken. It is conceded that the pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed, where such is the case, but in some cases by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary result to one of the parties immediately from the judgment. Thus a suit to quiet the title to parcels of real property, or to remove a cloud therefrom, by which their use and enjoyment by the owner are impaired, is brought within the cognizance of the court, under the statute, only by the value of the property affected."

The Circuit Court of Appeals of this circuit, in Cowell v. City Water Supply Co., 121 F. 53, 57, stated that it was "the amount or value of that which the complainant claims to recover, or the sum or value of that which the defendant will lose if the complainant succeeds in his suit, that constitutes the jurisdictional sum or value of the matter in dispute, which tests the jurisdiction of the Circuit Courts of the United States."

There are certain statements in some of the cases which might make it appear that the defendant's position could be sustained. The case of Cowell v. City Water Supply

Co., supra, was a suit by an alleged owner of ⅟₃₂₅ of certain real property constituting waterworks and appurtenances, to cancel and avoid mortgages thereon for $475,000, and to declare his interest in the property free from the liens of those mortgages. It was held by the court that the jurisdictional amount was not involved because ⅟₃₂₅ of the property of the defendant was of a value not exceeding $1,650. Judge Thayer, in his concurring opinion, however, says: "In suits to remove a cloud upon a title, the value of the property affected or *imperiled* by the proceeding determines the amount actually in controversy, for jurisdictional purposes"—citing Smith v. Adams, supra, and then says: "It would seem, therefore, that the amount of the mortgages which complainant seeks to have annulled ought to be regarded as the amount actually at stake, as it clearly is so far as the defendants are concerned, who removed the action to the federal court. I am of opinion that it should be so regarded if there was no other prayer for relief contained in the bill than the cancellation of the mortgages." He then points out that the plaintiff asks, in the alternative, that the mortgages be canceled, or that he receive $1,509.79, which he apparently fixed as the maximum value of his interest in the property.

In the case of New Jersey Zinc Co. v. Trotter, 108 U. S. 564, 2 S. Ct. 875, 27 L. Ed. 828, it appears that Trotter brought an action against the New Jersey Zinc Company for entering on his lands and digging up and carrying away a quantity of ore. The defendant entered a denial, and no other issue was raised by the pleadings. Trotter recovered a judgment for less than $5,000. The Zinc Company appealed, and Trotter moved to dismiss because the matter in dispute did not exceed $5,000. It had been determined in Hilton v. Dickinson, 108 U. S. 165, 2 S. Ct. 424, 27 L. Ed. 688, that the jurisdiction of the Supreme Court was limited to suits in which the matters in dispute exceeded $5,000. Chief Justice Waite said: "It may be that the question actually litigated below related to the title of the parties to the land from which the ore in controversy was taken, and that the verdict will be conclusive on that question as an estoppel in some other case; but, as was also said at the present term, in Elgin v. Marshall, 106 U. S. 578 [1 S. Ct. 484, 27 L. Ed. 249], for the purpose of estimating the value on which our jurisdiction depends, reference can only be had to the matter actually in dispute in the particular cause in which the judgment to be reviewed was rendered, and we are not per-

mitted to consider the collateral effect of the judgment in another suit between the same or other parties. It is the money value of what has been actually adjudged in the cause that is to be taken into the account, not the probative force of the judgment in some other suit. Here the thing, and the only thing, adjudged is that the zinc company was guilty of the particular trespass complained of, and must pay Trotter $3,320 for the ore taken away. *Had the zinc company pleaded title to the land from which the ore was taken, and issue had been joined on that plea, a different question would have been presented. In that way, the land might have been made the matter for adjudication, and thus the matter in dispute on the record.* But, as this case stands, only the possession of Trotter and his right to the ore are involved. It may be that, in order to find possession in Trotter, the jury were compelled to find that he had title to the land, and that in this way the verdict and judgment may estop the parties in another suit, but that will be a collateral, not the direct, effect of the judgment."

The Supreme Court, however, was considering the issues actually made by the pleadings.

However, in Vicksburg, etc., R. Co. v. Smith, 135 U. S. 195, 200, 10 S. Ct. 728 (34 L. Ed. 95), the question of the jurisdiction of the Supreme Court upon writ of error was again raised. A suit was brought to recover from T. possession of 35 acres of land, part of a tract of 186 acres, which the plaintiff claimed to own. T., as lessor, was made defendant, and answered, claiming to own the entire 186 acres. The plaintiff recovered a judgment for the 35 acres, which were worth not exceeding $2,000. The value of the 186 acres was $10,000. The lessor brought the case to the Supreme Court upon a writ of error. The court said: "But we are of opinion that this court is without jurisdiction of the case. All that the plaintiffs, in their petition, claimed to recover was the part of the land which was in the possession of Turner, alleged therein to contain 40 acres or more. The answer alleged that the land sought to be recovered in the suit was worth at least $10,000, and prayed that the plaintiffs' demand be rejected, and for judgment decreeing the company 'to be the owner of said land.' This put in issue only the land in the possession of Turner. The judgment is limited to a piece of land described by metes and bounds, and containing 35¹⁸⁄₁₀₀ acres, as shown by a map and survey of the same, on file and of record in the cause. The value of that parcel of land is shown clearly to be not over $2,000, and this is conclusive as to our jurisdiction. Elgin v. Marshall, 106 U. S. 578 [1 S. Ct. 484, 27 L. Ed. 249], and cases there cited; Opelika City v. Daniel, 109 U. S. 108 [3 S. Ct. 70, 27 L. Ed. 873]; Bruce v. Manchester & Keene Railroad, 117 U. S. 514 [6 S. Ct. 849, 29 L. Ed. 990]; Gibson v. Shufeldt, 122 U. S. 24 [27, 7 S. Ct. 1066, 30 L. Ed. 1083]."

The defendant, however, seems to feel that the Supreme Court has shown some change of attitude in the case of Berryman v. Board of Trustees of Whitman College, 222 U. S. 334, 32 S. Ct. 147, 56 L. Ed. 225. That was a suit brought by the college, asking for a decree recognizing and enforcing an alleged contract of perpetual exemption from taxation as to all its property, present and prospective, and for an injunction adequate to secure these results. It was asserted by the taxing officers, against whom the suit was brought, that the amount in controversy was to be measured by the amount of taxes for the years in controversy, which was less than the jurisdictional amount and did not extend to future taxes. The court held that the amount in controversy is measured by the value of the right to be protected, and not by a mere isolated element, such as the tax for a single year. The Berryman Case is of the same class as those cases where an injunction has been sought to protect or to prevent the enforcement of a valuable right, such as Western & Atlantic R. R. v. Railroad Comm., 261 U. S. 264, 43 S. Ct. 252, 67 L. Ed. 645; Bitterman v. Louisville & N. R. Co., 207 U. S. 205, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Hunt v. N. Y. Cotton Exchange, 205 U. S. 322, 27 S. Ct. 529, 51 L. Ed. 821; Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U. S. 121, 36 S. Ct. 30, 60 L. Ed. 174.

My conclusion is that the immediate matter in controversy in this case is the title to the 40 acres described in the complaint; that the measure of its value is the value of that land. If the plaintiff prevails, the defendant, as the immediate effect of the decree, will lose only that 40. The judgment may estop it as to other 40's included in the deed from Martha V. Enger to Anna M. Enger. Except, however, for the allegations of the counterclaim, there is nothing to show that the plaintiff claims to own the other three 40's therein described.

As this suit must be remanded, it is unnecessary to determine whether the court could enjoin the registration proceeding in the state court. However, attention is called to the fact that the federal court obtained ju-

142

risdiction, if at all, on or after the 19th day of October, 1928, when the petition and bond were filed. See Anderson v. United Realty Co., 222 U. S. 164, 32 S. Ct. 50, 56 L. Ed. 144; Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 244, 25 S. Ct. 251 (49 L. Ed. 462); New Orleans, M. & T. Railroad Co. v. Mississippi, 102 U. S. 135, 26 L. Ed. 96; Baltimore & O. Railroad v. Koontz, 104 U. S. 5, 14 (26 L. Ed. 643); National Steamship Co. v. Tugman, 106 U. S. 118, 122, 1 S. Ct. 58 (27 L. Ed. 87); St. P. & C. Ry. Co. v. McLean, 108 U. S. 212, 216, 2 S. Ct. 498 (27 L. Ed. 703); Crehore v. Ohio, etc., Ry. Co., 131 U. S. 240, 243, 9 S. Ct. 692 (33 L. Ed. 144); Kern v. Huidekoper, 103 U. S. 485, 493 (26 L. Ed. 354). The registration proceeding was commenced on the 18th day of October, 1928. It would therefore appear that the state court had obtained jurisdiction of that proceeding before this court obtained jurisdiction of this case, and no injunction could have been granted even though defendant's theory were correct as to removability.

The motion to remand is granted.